IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 5, 2005

## STATE OF TENNESSEE v. WILLIAM L. MILLER

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40300487     Michael R. Jones, Judge**

_____

**No. M2004-01730-CCA-R3-CD - Filed May 25, 2005**

_____

A Montgomery County jury convicted the defendant, William L. Miller, of possession with intent to sell over 0.5 grams of cocaine, simple possession of marijuana, possession of drug paraphernalia, evading arrest, assault, resisting arrest, and driving on a revoked driver's license. The trial court ordered the defendant to serve an effective sentence of eight years, with six days in the county jail and the remainder to be served in Community Corrections.[1] On appeal, the defendant contends that the evidence was insufficient to support his convictions for possession with intent to sell over 0.5 grams of cocaine and assault. After reviewing the record and applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which DAVID H. WELLES and JAMES CURWOOD WITT, JR., JJ., joined.

Roger E. Nell, District Public Defender (on appeal) and, Russel A. Church, Assistant Public Defender (at trial) for the appellant, William L. Miller.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Dan Brollier, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Facts and Procedural History

The facts at trial established that, on May 2, 2003, Narcotics Investigator Michael Scott Thornton and Agent Raymond Macias of the Clarksville Police Department approached the

---

[1] The record indicates that the defendant was given pre-trial jail credit from 5/02/03-5/05/03. Consequently, he was required to serve forty-eight hours in incarceration.

defendant's vehicle parked on the side of the road. Upon noticing their approach, the defendant started his vehicle and fled at a high rate of speed. Soon after, the defendant stopped and informed the officers that he did not have a valid driver's license. When Investigator Thornton asked the defendant to step out of the car, so as to handcuff him, the defendant began to struggle. While flailing around with only one wrist handcuffed, the defendant removed a pill bottle from his pocket and threw it to the base of a nearby tree. During the course of the struggle, Officer Macias' finger was dislocated and the defendant escaped. Thereafter, a brief foot pursuit of the defendant ensued. When the defendant was apprehended, the officers found marijuana and $174 on his person. The officers also discovered crack cocaine in the pill bottle that the defendant had thrown to the base of the tree. The officers recovered a box of plastic bags and razor blades in the defendant's vehicle.

At trial, Investigator Thornton testified that the recovered pill bottle contained over two grams of cocaine with "pieces . . . in various sizes."[2] He explained that a "dime size rock . . . is prepared for smoking size. The other pieces are what a person that had bought in quantity would purchase to cut up to smaller pieces." Investigator Thornton testified that often a razor blade is used to "cut off pieces that weigh approximately one-tenth of a gram." He insisted that the significance of the razor blades found in this case was "to cut up crack cocaine." He then explained that the corners of plastic bags are used to house the cut rocks for sale. He also explained the specific street value of the cocaine: "if you buy a single rock and it weighs one-tenth of a gram, your cost is ten dollars." He also testified that, after being arrested, the defendant admitted that he had sold crack cocaine earlier that morning and was caught "dirty."

Agent Macias described the struggle that occurred during the defendant's arrest. He stated that the altercation resulted in the dislocation of his little finger and damage to his vehicle, the driver's side mirror was torn from his car. In describing his injury, Agent Macias stated, "At one point, I did grab [the defendant] and I don't know if I grabbed him by a cuff that was dangling . . . I don't remember exactly, but my finger got wrapped up in twine some kind of way . . . ."

At the conclusion of this evidence, the jury found the defendant guilty of: (1) possession with intent to sell over 0.5 grams of cocaine, a Class B felony;[3] (2) simple possession of marijuana, a Class A misdemeanor; (3) possession of drug paraphernalia, a Class A misdemeanor; (4) evading arrest, a Class A misdemeanor; (5) assault, a Class A misdemeanor; (6) resisting arrest, a Class A misdemeanor; and (7) driving on a revoked license, a Class A misdemeanor. Following a sentencing hearing, the trial court ordered the defendant to complete 400 hours of community service and serve an eight-year sentence, with six days in jail and the remainder in Community Corrections for the possession with intent to sell over 0.5 grams of cocaine conviction. The trial court ordered the defendant to serve six months' probation for the resisting arrest conviction and eleven months

---

[2] Agent Patty Choatie of the Tennessee Bureau of Investigation testified that the specific weight of the cocaine was "two point three grams."

[3] The judgment form indicates that a conviction for possession with intent to deliver over 0.5 grams of cocaine was merged into this conviction.

twenty-nine days probation for all remaining convictions, ordering all sentences to run concurrently. The trial court also fined the defendant a total of $2250. The defendant now appeals.

**Analysis**

Our review begins with the well-established rule that, once a jury finds the defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. State v. Smith, 868 S.W.2d 561, 569 (Tenn. 1993). On appeal, a convicted defendant has the burden of demonstrating to this Court why the evidence will not support the jury's verdict. State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "reasonable trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003); Tenn. R. App. P. 13(e). In contrast, a jury's verdict, approved by the trial judge, accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be taken from that evidence. Carruthers, 35 S.W.3d at 558; Tuggle, 639 S.W.2d at 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. See State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

In the defendant's first argument on appeal, he claims that the evidence was insufficient to support his conviction for possession with intent to sell over 0.5 grams of cocaine. In order to convict the defendant, the State was required to prove beyond a reasonable doubt that the defendant: (1) knowingly possessed cocaine; (2) in the amount over 0.5 grams; and (3) did so with the intent to sell. See Tenn. Code Ann. § 39-17-417(a)(4) and (c)(1). The defendant does not argue that the evidence is insufficient to support a conviction of simple possession of cocaine.[4] Nor does he contest that the amount of cocaine was over 0.5 grams. Rather, he asserts that the evidence does not support the element of intent to sell. He argues that only circumstantial evidence of intent was proven at trial. Pursuant to Tennessee Code Annotated section 39-17-419, a jury may infer "from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Proof of intent usually consists of circumstantial evidence and the inferences that can be reasonably drawn from that evidence. See Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973); State v. Charles Benson, No. M2003-02127-CCA-R3-CD, 2004 WL 2266801, at *2 (Tenn. Crim. App., at Nashville, Oct. 8, 2004). "In fact, intent can rarely be shown by direct proof and must, necessarily, be shown by circumstantial evidence." Hall, 490 S.W.2d at 496.

---

[4] By brief, the defendant states: "The evidence does support the theory that the drugs were possessed only for personal use."

-3-

In the instance case, the evidence collected and presented at trial included a box of plastic bags, razor blades, $174 in cash, and a quantity of cocaine in excess of 0.5 grams. In addition, the defendant admitted that he had sold crack cocaine earlier the same day. At trial, Investigator Thornton explained the street value of the cocaine and how the substance is distributed. He also testified that the crack cocaine was broken into smaller pieces within the bottle. Viewed in a light most favorable to the State, this evidence was clearly sufficient to enable a rational trier of fact to infer intent to sell.

In the defendant's second argument on appeal, he claims that the evidence does not support his conviction for assault. He does not contest Agent Macias' testimony that bodily injury occurred. Instead, the defendant claims that he did not meet the necessary mental state to be convicted of assault. Tennessee Code Annotated section 39-13-101(a)(1) explains that a person commits assault by intentionally, knowingly, or recklessly causing bodily injury to another. The defendant correctly asserts that the record is absent any indication that he "knowingly" or "intentionally" injured Agent Macias. Therefore, we must determine whether the defendant's conduct constituted recklessness, which could sustain a finding of assault. Tennessee Code Annotated section 39-11-302(c) defines "reckless" as follows:

> "Reckless" refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

The proof at trial revealed that the defendant resisted arrest and that a struggle ensued between the defendant and the officers. At the time, only one of the defendant's hands was handcuffed, leaving the other handcuff dangling as a weapon. The altercation was of such a degree that it caused damage to Agent Macias' vehicle. Clearly, choosing to resist and evade arrest in this manner constituted a gross deviation from the standard of care exercised by ordinary persons. Accordingly, we conclude that the evidence supports the conviction for assault based upon the defendant's reckless behavior.

## Conclusion

Based upon the foregoing reasons, we affirm the judgment of the trial court.

-4-

_____
J.C. McLIN, JUDGE